UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Erickson,

          Plaintiff,

v.

Performant Recovery, Inc.,
d/b/a Diversified Collection
Services, Inc., and,
Does 1-10

          Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-2818 ADM/FLN

---

A.L. Brown, Esq., Capitol City Law Group, LLC, St. Paul, MN, on behalf of Plaintiff.

Jessica L. Klander, Esq., and Michael A. Klutho, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Defendants.

---

## I.  INTRODUCTION

On April 23, 2013, the undersigned United States District Judge heard oral argument on Defendant Performant Recovery, Inc.'s ("Performant") Motion for Judgment on the Pleadings [Docket No. 11].  In his Complaint [Docket No. 1], Plaintiff David Erickson ("Erickson") asserts claims against Performant for alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692-1692p.[1]  For the reasons set forth below, Performant's motion is granted.

## II.  BACKGROUND

As alleged in the Complaint, Erickson co-signed a student loan on March 8, 2005, acting as a guarantor.  The primary obligor defaulted and the debt was transferred to Performant for

---

[1] Erickson conceded his common law invasion of privacy claim, leaving only his FDCPA claims.  Pl.'s Am. Mem. Opp'n [Docket No. 17] 1 ("Response").

collection. Sometime around August 2012, Erickson began receiving calls on his home and cellular phones. Performant did not make contact and did not leave a message. Compl. ¶ 12. At some unidentified date, Erickson decided to call the number that he saw displayed on his caller ID. Id. During that call, a Performant employee attempted to convince Erickson to pay the student loan debt "using the equity in his home." Id. ¶ 13. Erickson alleges that the Performant employee told him his credit "was so ruined by this debt that [the Performant employee said,] 'he couldn't even buy an apple.'" Erickson further alleges he did not receive a debt validation notice. Id. ¶ 17.

### III. DISCUSSION

**A. Standard for Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure has consistently been reviewed under the same standard used to evaluate a motion to dismiss under Rule 12(b)(6). Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006); Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009), cert. denied, 130 S. Ct. 3507 (2010); Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Ordinarily, matters outside the pleadings are not considered. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings. Mattes v. ABC Plastics, Inc., 323

F.3d 695, 697 n.4 (8th Cir. 2003). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]." Westcott, 901 F.2d at 1488. A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief. See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Insufficient pleadings can cause a failure to state a claim. Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. FDCPA § 1692g**

"[W]ithin five days after the initial communication with a consumer in connection with the collection of any debt," debt collectors are required to "send the consumer a written notice." 15 U.S.C. § 1692g(a). In essence, showing a violation of Section 1692g(a) requires sufficiently pled allegations of (1) an initial communication and then (2) the debt collector's failure to send notice within five days.

3

The Complaint alleges "[s]ometime around August 2012" the debt was transferred to Performant and sometime later "Plaintiff began receiving collection calls on both his home and cell phone." Compl. ¶ 10. The Defendants did not leave a message. Id. ¶ 12. The initial communication, or first interactive contact, was Erickson calling and connecting with Defendants. However, there is no indication as to when that call took place.[2]

Therefore, Erickson pleads insufficient facts, even if taken as true, to establish a claim beyond the speculative level. Although Erickson is entitled to all reasonable inferences, no inference at all can be drawn from a lack of facts. Erickson's claim that Defendants failed to send timely notice is conclusory. Without even an estimated initial communication, defendants cannot be sufficiently on notice to defend the claim against them.

Assuming Erickson's Complaint did sufficiently identify when the initial communication took place, the Complaint has another pleading issue. Erickson claims that he "has not received a validation notice" and alleges that Performant did not "provide the validation notice." Compl. ¶¶ 17, 24. Section 1692g requires the debt collector send a written notice. Erickson argues the Court should infer from his Complaint that Defendant did not send the notice since he did not

---

[2] Defendants have provided the Court with an affidavit from Performant's Director of Regulatory Compliance, which claims Performant's first communication with Erickson was on September 28, 2012. Christie Aff. [Docket No. 19] ¶¶ 2-3. Attached to the affidavit is a letter from Performant to Erickson dated October 2, 2012. Id. Ex. A. If true, Performant appears to have followed the five day notice portion of the statute. Erickson responds, "For all we know, at least at this stage, the initial communication took place as early as August of 2012 . . . ." Resp. 6. Erickson concludes that if an initial communication took place in August or September, it would violate Section 1692g(a). Whether or not the affidavit and exhibit are necessarily embraced by the pleadings, Erickson cannot create an issue of fact where none previously existed. Claiming now that the initial communication took place as early as August, 2012, is (a) inappropriate in a responsive memorandum and (b) still too imprecise to cure the inadequacies of the Complaint.

receive it. But, in similar cases, courts have found allegations of failure to receive are insufficient. Carpenter v. RJM Acquis'ns, LLC, 787 F. Supp. 2d 971, 974 (D. Minn. 2011); see Moore v. Ccb Credit Servs., No. 4:11CV2132 RWS, 2013 U.S. Dist. LEXIS 8010, at *5-6 (E.D. Mo. Jan. 18, 2013); see also Mattson v. U.S. W. Commc'ns, Inc., 967 F.2d 259, 261 (8th Cir. 1992) (statute of limitations begins to run at the time debt collector places its communication in the mail not at the time that debtor receives it). Therefore, Erickson's allegation he failed to receive, and thus was not provided with, a validation notice is insufficient to state a claim.

**C. FDCPA § 1692d and § 1692e**

    **1. Section 1692d**

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute lists, "without limiting the general application of the foregoing," conduct that includes, "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Id.

"[A]lthough the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.'" Gallagher v. Gurstel, Staloch & Chargo, P.A., 645 F. Supp. 2d 795, 799 (D. Minn. 2009) (citing, Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006)). By way of illustration, claims have been dismissed where debt collectors allegedly yelled at and were rude to the plaintiff, see Caulfield v. Am. Account & Advisors, No. 12-2761(DSD/JJK), 2013 U.S. Dist. LEXIS 66935 (D. Minn. May 10, 2013) (granting a motion

5

for judgment on the pleadings), and where the debt collector's rudeness and obstinance did not constitute the kind of "oppressive, harassing, or abusive behavior" needed to state a claim under § 1692d, see Gnoinska v. Messerli & Kramer, P.A., No. 12-947 (PAM/SER), 2012 U.S. Dist. LEXIS 156614, at *4-5 (D. Minn. Nov. 1, 2012) (granting motion to dismiss). When considering § 1692d(5), which prohibits "causing the telephone to ring . . . with intent to annoy . . . ," courts have looked to the volume and pattern of calls. Compare Quander v. Hillcrest, Davidson & Assocs., LLC, No. RDB-12-1932, 2012 U.S. Dist. LEXIS 182054, at *9-11 (D. Md. Dec. 27, 2012) (granting motion to dismiss on insufficient pleading grounds where the plaintiff "does not allege that the calls were made at an unreasonable time or hour or in an unreasonable manner[; and, s]he merely alleges that Defendant 'placed up to two collection calls per day' and also states in her response that she did not always answer these calls), with Sussman v. I.C. Sys., No. 12-CV-0181 (ER), 2013 U.S. Dist. LEXIS 31721, at *21-23 (S.D.N.Y. Mar. 6, 2013) (denying motion to dismiss where plaintiff alleged receiving over 50 calls), and Crockett v. Rash Curtis & Assocs., No. C 12-06429 WHA, 2013 U.S. Dist. LEXIS 35771, at *3-6 (N.D. Cal. Mar. 14, 2013) (denying motion to dismiss where plaintiff alleged defendant called her home at least 22 times).

### 2. Annoyance

Erickson's first claim lacks specificity. Erickson avers that around August 2012, Defendants acquired his debt and began calling Erickson on both his home and cell phone. Compl. ¶ 10. Parroting the language of § 1692d(5), Erickson claims that these calls were made "repeatedly or continuously with the intent to annoy, abuse, or harass" Erickson. Compl. ¶ 25. Erickson alleges no further facts regarding Performant's efforts to contact him. As in Quander,

Erickson does not allege that the calls were made at an unreasonable time or hour, or in an unreasonable manner. Erickson did not know Performant was calling until Erickson himself called the number captured on his phone's caller identification. Accordingly, Erickson's Complaint only includes "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Erickson has failed to allege a plausible cause of action under 15 U.S.C. § 1692d.

### 3. Abuse

Erickson made the affirmative decision to call the unidentified number that repeatedly appeared on his phone. Upon receiving Erickson's call, Performant identified itself and informed Erickson that Performant was trying to collect a student loan debt that he had co-signed. According to the Complaint, a Performant employee, "attempted to get Plaintiff to pay off [his] debt using the equity in his home . . . ." Compl. ¶ 13. Erickson then cites two Minnesota state court cases which, he argues, exempt debt collectors from placing liens against a debtor's homestead. Id. Significantly, Erickson does not allege Performant threatened to place a lien on Erickson's home. The only allegation is that Performant attempted to get Erickson to pay off his debt. As a debt collector, this conduct is not surprising. Suggesting Erickson use the equity in his home as a source of money to pay off his debt is not automatically abusive, oppressive or harassing. It is also not false or misleading. Erickson could choose any number of payment options. That Performant may not be legally able to put a lien on Erickson's home is irrelevant, unless Performant falsely threatened to do so.

Performant's employee also allegedly told Erickson that "his credit was so ruined by this debt that 'he couldn't even buy an apple.'" Compl. ¶¶ 14, 27. Erickson argues that this assertion

is both deceptive and abusive because Performant had no way of knowing what impact Erickson's debt has had on Erickson's credit score. Resp. 7. In essence, Erickson argues Performant harmed him by scaring him about the impact of the debt on his credit score. But, telling a consumer he "couldn't even buy an apple" is not a statement the natural consequence of which is to harass, oppress, or abuse. See Gallagher, 645 F. Supp. at 799 (summary judgment granted to defendant finding "no profanities, no name calling, no insults, no unwanted calls, no disclosure of private information to third parties"). Erickson's allegation of a violation of Section 1692d is insufficiently pled.

### 4. Section 1692e

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In evaluating whether a debt collector's conduct violates the prohibitions of § 1692e, courts view the debt collector's conduct "'through the eyes of the unsophisticated consumer.'" See Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) (quoting Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000)). The "unsophisticated consumer" test is "designed to protect consumers of below average sophistication or intelligence, but [it] also contain[s] an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (quotations and citations omitted). In addition, "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable." Gnoinska, 2012 U.S. Dist. LEXIS 156614, at *6 (quoting Hahn v. Triumph P'ships LLC, 557 F.3d 755, 758 (7th Cir. 2009)). A defendant's statement is considered material if it "frustrates a consumer's ability to intelligently choose his

or her response." Caulfield, 2013 U.S. Dist. LEXIS 66935, at *6 (citing Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir. 2010)).

### 5. Misrepresentation

Telling Erickson that his credit was ruined was either false or misleading because according to the Complaint, Performant had no knowledge of his credit score. Therefore, the materiality of the statement is the remaining issue. Credit scores are often used as indicators of financial health. But, Performant's opinion about an individual's credit score has no effect on that individual's ability or decision to pay a student loan debt. Simply expressing an opinion about someone's credit score as a consequence of unpaid debts is not material to the collection of the debt. An allegation of coercion could form a nexus connecting Performant's representation with the collection of the debt, but the Complaint alleges no such coercion.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings [Docket No. 11] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 25, 2013.